9

FILED

MAY 18 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### FRESNO DIVISION

| | |
|---|---|
| In re<br><br>GEMA LOPEZ,<br><br>    Debtor.<br>_____<br>JOHN PAGLIERO, in his individual capacity and as Trustee for The PAGLIERO FAMILY REVOCABLE LIVING TRUST,<br><br>    Plaintiffs,<br><br>vs.<br><br>GEMA LOPEZ,<br><br>    Defendant. | Case No. 09-18232-A-7<br><br>Adversary No. 09-1277-A<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

## INTRODUCTION

The Plaintiff filed his complaint on November 16, 2009, requesting a judgment against the Defendant for $150,000.00, plus attorneys fees and costs, and that the judgment be declared to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The Defendant filed her answer on December 23, 2009, asking that Plaintiff's request for relief be denied, asking for costs of suit. She alleges various affirmative defenses in support of her position. After discovery was completed in this Adversary Proceeding, the matter was set for trial on February 22, 2011. At

the conclusion of the trial, Proposed Findings of Fact and Conclusions of Law were due by Plaintiff on March 18, 2011, the defendants Proposed Findings of Fact and Conclusions of Law were due on April 1, 2011, and the Reply was due on April 8, 2011. The matter was then submitted.

## APPEARANCES

Plaintiff John Pagliero, individually and as the Trustee of the Pagliero Family Trust, was present in Court and represented by Counsel H. Ty Kharazi, and Defendant Gema Lopez appeared with her Counsel Richard Harris.

## JURISDICTION

The Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. Jurisdiction exists pursuant to 28 U.S.C. § 1334. Venue is proper under 28 U.S.C. § 1409(a). The District Court has generally referred these matters to the Bankruptcy Court for hearing pursuant to 28 U.S.C. § 157(a) and United States District Court, Eastern District of California, General Orders 182 and 223. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) A & I. The specific issue raised in the complaint is § 523(a)(2)(A).

## CONCLUSIONS OF LAW

Section 523(a)(2)(A) provides "A discharge under section 727, 1141, 1228(a), 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, . . . ." 11 U.S.C. § 523(a)(2)(A).

The Ninth Circuit recognizes a five-part test for determining whether a debt is non-dischargeable under § 523 (a)(2)(A):

(1) the debtor made representations:

(2) that at the time he or she knew were false;

(3) that he or she made them with the intention and purpose of deceiving the creditor;

(4) that the creditor justifiably relied on such representations; (and)

(5) that the creditor sustained the alleged loss and damage as the proximate result of the

    misrepresentations that have been made.

In Re Sabban, 600 F. 3d 1219, 1222 (9th Cir. 2011)

The creditor has the burden of proof. Id. "In order to avoid unjustifiably impairing a debtor's fresh start," the Ninth Circuit held "the exception should be construed strictly against creditors and in favor of debtors." Id. At the same time, the Ninth Circuit "recognized that Congress created the exception to prevent a debtor from retaining the benefits of property obtained by fraudulent means and to ensure that the relief intended for honest debtors does not go to the dishonest debtors." Id.

For a debt to be excepted from the discharge, the debtor must actually intend to defraud the creditor. In re Tsurukawa, 258 B. R. 192, 198 (9th Cir. BAP 2001). Intent to defraud under § 523 (a)(2)(A) can be based on the totality of the circumstances when the trier of fact is convinced by a preponderance of the evidence. Grogan v. Garner, 498 U. S. 279, 286 (1991). "A court may infer the existence of the debtor's intent not to pay if the facts and circumstances of

a particular case present a picture of deceptive conduct by the debtor." In re Hashemi, 104 F. 3d 1122, 1125 (9th Cir. 1996).

A Debtor's silence regarding a material fact can constitute a false representation under § 523(a)(2)(A). Caspers v Van Horn, 823 F.2d 1285 (8th Cir 1987). The omission, concealment, or understatement of liabilities will ordinarily constitute a materially false statement. First National Bank v Latona, 260 F.2d 264 (2d Cir 1958). Under common law, a false representation can be established by an omission when there is a duty to disclose. The Restatement (Second) of Torts 551 discusses liability for nondisclosure:

> "(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose . . . ."

Restatement (Second) of Torts 551 (1976)

## FINDINGS OF FACT AND DISCUSSION

1. Sometime in the year 2004, Plaintiff met Defendant through a matchmaking service. Plaintiff's wife of 30 years had just died, and Plaintiff had four children, two of which suffered from a very serious disease. Plaintiff learned that the Defendant was a manager and graphic artist at Fair Isaac. She had been employed there eleven years. Plaintiff and Defendant started dating, and during their early courtship, Plaintiff became aware of her talent as a artist and a professional. She informed him that if she had the opportunity for one year, she could make a go of it financially and spend all her time painting.. It was her desire to pursue her fine arts career and paint. She expressed her desire to quit her job as she was tired of working in the corporate world. She was tired of working for other people. The Plaintiff and the Defendant had conversations about helping her financially so she could pursue this new career. Ultimately he loaned her $60,000, payable $5,000 per month which had come from the Pagliero Family Trust.

This was set up to be Caleb and Sarah's, his daughters, college fund. They agreed that the loan money would be used to pay her bills and allow her to paint full time, from 40 to 60 hours a week, in her garage. She promised that she would work hard so she could pay the loan back. Plaintiff started paying her in September 2005. By then she had quit her job, but she told Plaintiff that she could always go back to that job if necessary. She promised that she would work hard to produce a lot of paintings that could be sold and that the proceeds would be used to pay off the loan. If she could not produce enough to pay back the loan, she said she would go back to Fair Isaac, and if that did not work, she would sell her house.

2. Based upon the repayment agreement, Plaintiff advanced monthly payments of $5,000 to her so she could pay her bills. At some point he learned that she had a IRA or 401K account from her work. She did not disclose this to him in the beginning and had he known that fact, he would not have loaned her the money. He further found out that her job position at Fair Isaac had been discontinued, thus putting her job in jeopardy. He also found out that she had filed bankruptcy about eight years prior and had he known that fact, he would not have loaned her the money. Further, he did not know that she had borrowed money against her Oakland house in March 2005. Had he known that fact, he would not have loaned her money. He had always thought that she was a very professional person, who had her act together in all respects.

The parties got married on July 15, 2006, shortly after Plaintiff lost his son. Shortly thereafter, he learned that she had a lot of credit card debt that extended back prior to their marriage and even before they met. He testified that had he known about the large credit card debt, he would not have loaned her the money. On September 1, 2006, the parties entered into a written agreement whereby Plaintiff would collectively loan to Defendant $150,000, $60,000 of which was previously paid in twelve monthly installments of $5,000. The last payment was in July, 2006, the same month that the parties got married. The Plaintiff agreed to pay $42,418 towards the credit card debt of Defendant. The remaining balance of the $150,000 was to be paid to assist her in her daily living expenses. This loan was to be secured by the Oakland Residence.
5

3. The Plaintiff was unaware that Defendant was slated to be laid off from her job in approximately October 2005 due to the discontinuance of the entire department where she worked, and he was further unaware that she had a retirement fund earned from her employment. Plaintiff was also unaware that Defendant had refinanced her Oakland home, thereby receiving $50,000 in cash, some of which she used to pay on credit card debt and some of which she received in cash. Because of the refinancing and the prior mortgage against the property, there was no equity in the house from which any payments back to Plaintiff could be made.

4. The entire loan of $150,000 was documented by a note and deed of trust on Defendant's Oakland home. See Exhibit #1 offered at trial. The Note calls for payments of $937.50 per month starting on November 1, 2006. It accrues interest at the rate of 7.5%, and included a provision for attorneys fee if it became necessary to commence a suit to collect on the note. The couple separated in November 2008. Divorce followed in 2009, and Defendant filed bankruptcy in August 2009, listing Plaintiff as a creditor.

5. The Plaintiff received one payment from the note in early 2008. All of the evidence supports Plaintiff's case that he justifiably relied on the representations made by Lopez that she wanted a chance to paint away from her day job; that she would work hard to produce paintings so she could pay off her loan; that she had equity in her house which would allow her to borrow money to pay off the loan; and that if she could not produce enough product to pay off the loan, she could go back to work at Fair Isaac. The omissions of facts by Defendant are also crucial. She did not disclose that she was about to lose her job because of the discontinuance of the department she was working in at Fair Isaac; she did not disclose her huge credit card debt; she did not disclose that she had borrowed money on her house and used up any equity she had; she did not disclose her prior bankruptcy; she did not disclose her retirement account; and she did not disclose that her intent was not to work sufficiently to garner sufficient funds to make any payments of her loan to Plaintiff.

6. During the period 2006-2008, Defendant cashed out her retirement account and did not repay Plaintiff any sums from this account.

7. The Court finds that Defendant falsely represented her employment status at Fair Isaac's; did not reveal her borrowing of $50,000 from the equity of her Oakland home thereby leaving no equity in the home from which Plaintiff could be repaid his loan; failed to acknowledge her credit card debt before the loan was made; and failed to reveal her cashing out her retirement account and using the funds for other than repayment of her loan to Plaintiff.

8. The testimony is convincing by a preponderance of evidence that Defendant knew her job at Fair Isaac was going to be terminated because the department itself was being dropped and she knowingly failed to disclose this fact to Plaintiff before she borrowed the funds, the subject of this lawsuit. Further Defendant knowingly concealed the fact that she had refinanced her Oakland home leaving no equity in the property from which any payments could be made to Plaintiff.

9. A debtor's fraudulent intent may be established by circumstantial evidence or by inferences drawn from his or her course of conduct. See e/g/ In re Wills 243 B. R. 58,64 (Ninth Cir BAP 1999). The intent to deceive may be found from the surrounding circumstances some of which are set forth above.

10. Did Plaintiff rely on Defendant's Representations and was his reliance reasonable? The evidence supports the conclusion that it was. He was in a romantic relationship with her; he wanted to see her fulfil her dreams by becoming a artist; he knew she wanted to quit her job and be a freelance person and she could not do that unless she could get some money to pay her bills; he had money available that he wanted to loan her to give her a fresh start; and there was a way to get his loan back either by her selling her art works, by her getting another full time graphic

artist job, or by her selling her Oakland house in which there was some equity.

11. The preponderance of evidence presented at this trial supports a verdict for the Plaintiff. Each element of § 523(a)(2)(A), the representations, their falsity, the intent to deceive, the justifiable reliance and the damages, are all in favor of Plaintiff.

12. The Defendant alleges in his First Affirmative Defense that the California Code of Civil Procedure Section 726 is controlling. It has no application in this case. The dischargeability issue raised in this case is controlled by federal bankruptcy law and not by state law. Likewise, the Affirmative Defenses of Failure to State a Cause of Action, Uncertainty, Failure to Mitigate Damages, Contributory Negligence, Laches, Acts of Third Parties, No Damages, Unclean Hands, Justification, Good Faith, Assumption of Risk, Apportionment, Setoff, Gift, Waiver, Estoppel, Reservation of Rights, are all without merit and fail as defenses.

13. The defendant raised Affirmative Defense No. 8 that Plaintiff's claim for attorneys fees and costs is not authorized by statute or by contract. Exhibit "1" introduced at trial is a promissory note signed by Defendant, and it authorized both interest and attorney fees.

14. The Court concludes that Defendant is indebted to Plaintiff in the sum of $150,000.00 plus interest at the rate of 7.5% commencing September 1, 2006, until the date of this judgment, and then interest is allowed from the date of this Judgment until paid at the Federal Legal Rate. The Court will also allow costs, as proven, but will not allow attorneys fees as a part of the costs. Although the Note allowed for attorney fees, and although Plaintiff asked for attorney fees in his complaint, no proof was offered from which a request can be granted.

15. The Court further finds that the Debt is Non-Dischargeable pursuant to 11 U. S. C. § 523 (a)(2)(A).

A separate order shall issue.

DATED: 5-18-11

*(signature)*
RICHARD T. FORD, Judge
United States Bankruptcy Court